Upon review of the competent evidence of record with respect to the errors assigned, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Hartford Accident Indemnity Company was the carrier on the risk.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff's average weekly wage was $324.00, which yields a weekly compensation rate of $216.01.
5. Plaintiff sustained an admittedly compensable injury on 28 May 1993, following which the parties entered into a Form 21 Agreement. Plaintiff received temporary total disability benefits from 29 May 1993 through 31 August 1993, pursuant to the Form 21 Agreement.
6. The parties entered into a Final Compromise Settlement and Release, which was approved by the Executive Secretary of the Industrial Commission on 12 October 1995. Said Agreement is incorporated herein by reference.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
 FINDINGS OF FACT
1. On 28 May 1993, plaintiff was a twenty-nine year old married male with a ninth grade education and prior welding experience.
2. On 28 May 1993, plaintiff was operating a table saw for defendant-employer, which manufactured scientific furniture and equipment. At that time, plaintiff was operating the table saw when a board was projected back, striking him in the abdomen and slamming his back into a metal control box in his lower back.
3. On 20 September 1993, defendant-carrier filed an Application of Employer or Insurance Carrier to Stop Payment of Compensation (Form 24), with the Industrial Commission, which advised that plaintiff had been released to return to full unrestricted duty by Dr. Bruce Harris, the authorized treating physician, on 13 August 1993, and further, that plaintiff had been noncompliant in returning to full or light duty work. On 8 October 1993, the Form 24 was approved, and plaintiff's benefits were terminated.
4. On or about 27 September 1993, the Commission received a Letter of Representation on behalf of plaintiff from attorney J. Scott Hanvey.
5. On 1 October 1993, an independent medical evaluation by Dr. Ronald Gardner was authorized, at plaintiff's request. Dr. Gardner found plaintiff had a small amount of abdominal tenderness, and he recommended an evaluation with a neurosurgeon or neurologist to examine plaintiff's back. He also indicated that an MRI of the back may be appropriate.
6. Plaintiff was sent to Dr. Raymond Sweet, a neurosurgeon, on 9 November 1993. Following a physical examination, Dr. Sweet formed the opinion that there was no evidence of cervical or lumbar strain, that plaintiff had reached maximum medical improvement and retained no permanent partial impairment as a result of the compensable injury. Dr. Sweet found plaintiff capable of returning to his regular work.
7. On or about 28 June 1995, the parties negotiated an Agreement for Final Compromise Settlement and Release, which was signed by plaintiff's counsel on 21 September 1995, and by plaintiff on 22 September 1995. Thereafter, the Agreement was submitted to the Industrial Commission on 29 September 1995 for review.
8. Without the knowledge or authorization of defendants, plaintiff sought an evaluation with Dr. Stan Peters of Hickory Orthopedic Clinic on 5 July 1995. A myelogram and CT scan were performed, and, on 14 July 1995, plaintiff returned to Dr. Peters. Dr. Peters advised plaintiff that the testing was normal and that surgery was not indicated. Plaintiff was found to retain a five percent permanent partial impairment to his back as a result of the prior injury. Neither plaintiff nor his attorney made these records available to defendant during the settlement negotiations or pending approval of the settlement by the Commission, and these records were similarly not submitted to the Commission with the agreement.
9. At all times during the negotiation, signing, and submission of the Settlement Agreement for approval by the Commission, plaintiff was represented by Mr. Hanvey.
10. Pursuant to Commission Rule 502(3)(a), counsel for defendant submitted all medical records known to exist, which were relevant to plaintiff's case. However, counsel for defendant was unaware of the existence of the records of Dr. Peters.
11. Plaintiff testified that his lawyer did not review the settlement agreement with him but instead mailed the agreement for his signature. When he received the agreement, plaintiff did not read it before signing.
12. There is no evidence in the record to support a finding that plaintiff was induced by fraud, misrepresentation, undue influence, or mutual mistake to sign the settlement agreement. The misrepresentation in this case was due to acts or omissions on the part of plaintiff or his counsel in failing to advise defendants of the existence of additional medical evidence, and it would be unjust to allow plaintiff to benefit with respect to the agreement entered into in good faith by defendants, by setting aside the agreement.
 ***********
Based in the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff failed to prove that the Compromise Settlement Agreement should be set aside due to fraud, misrepresentation, undue influence, or mutual mistake. N.C. Gen. Stat. § 97-17.
2. Plaintiff failed to prove the existence of any ground for setting aside the settlement agreement.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim is denied.
2. Each side shall pay its own costs.
 S/ _______________________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ _____________________ DIANNE C. SELLERS COMMISSIONER
S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER